HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
BRIANNA FULLER MIRCHEFF (Bar No. 243641)
(Email: Brianna_Mircheff@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Tel: 213-894-4784
Fax: 213-894-0081

Attorneys for Petitioner
CALVIN THOMAS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CALVIN THOMAS,<br><br>                    Petitioner,<br><br>          v.<br><br>UNITED STATES OF AMERICA,<br><br>                    Respondent. | Case No. CV 17-725<br><br>[CR 96-06-RT]<br><br>**MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255** |

Petitioner Calvin Thomas, through undersigned counsel, hereby respectfully moves this Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: May 20, 2016                    By   /s/ Brianna Fuller Mircheff
                                                 BRIANNA FULLER MIRCHEFF
                                                 Deputy Federal Public Defender

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1

II. PROCEDURAL HISTORY .................................................................................1

    A.    Conviction and Sentencing ....................................................................1

    B.    Appeal, Resentencing, and Second Appeal ..........................................2

    C.    Section 2255 Motion .............................................................................3

    D.    Second or Successive 2255 Motion ......................................................3

III. ARGUMENT ......................................................................................................3

    A.    Count Two Must Be Vacated because the Predicate Offense, Armed Bank Robbery, Is Not a Crime of Violence after *Johnson*..................................................................3

        1.    Armed Bank Robbery No Longer Qualifies as a Crime of Violence under the Force Clause....................................5

            a.    Armed Bank Robbery Does Not Require the *Intentional* Use or Threatened Use of Force. ...................................................................7

            b.    Armed Bank Robbery Does Not Require the Use or Threatened Use of *Violent* Force. ..........................9

        2.    Following *Johnson*, Armed Bank Robbery Does Not Qualify as a Crime of Violence under the Residual Clause because that Clause Is Void for Vagueness. ...................................................................12

    B.    Following *Johnson*, Hobbs Act Robbery is Not a Crime of Violence under the Residual Clause because that Clause Is Void for Vagueness. ..........................................................15

        1.    Hobbs Act Robbery Does Not Necessarily Require the Use or Threatened Use of *Violent* Physical Force. ...................17

        2.    Hobbs Act Robbery Does Not Necessarily Require the *Intentional* Use or Threatened Use of Physical Force....................20

        3.    Hobbs Act Robbery Is an Indivisible Offense.............................21

        4.    *Mendez* Is Not Controlling because its Brief Reference to Hobbs Act Robbery Has Been Effectively Overruled.................23

    C.    Petitioner's 924(c) Conviction for Assault on a Federal Officer Is Also Invalid After *Johnson*. ..................................................25

i

        1.    Assault on a Federal Officer Does Not Require the Use or Threatened Use of *Violent* Force. .........................................26

        2.    Section 111 Does Not Require the *Intentional* Use or Threatened Use of Force .............................................28

IV. CONCLUSION ...................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Carter v. United States*,
    530 U.S. 255 (2000)................................................................ 7

*Chrzanoski v. Ashcroft*,
    327 F.3d 188 (2d Cir. 2003) ............................................... 10, 19

*Delgado-Hernandez v. Holder*,
    697 F.3d 1125 (9th Cir. 2012) ................................................ 14

*Descamps v. United States*,
    133 S. Ct. 2276 (2013)...................................................*passim*

*Dimaya v. Lynch*,
    803 F.3d 1110 (9th Cir. 2015) ............................................ 13, 14

*Fernandez-Ruiz v. Gonzales*,
    466 F.3d 1121 (9th Cir. 2006) .....................................6, 9, 24, 29

*Matter of Guzman-Polanco*,
    26 I. & N. Dec. 713 (BIA 2016)............................................. 10

*James v. United States*,
    550 U.S. 192 (2007)............................................................ 13

*Johnson v. United States*,
    135 S. Ct. 2551 (2015)...................................................*passim*

*Johnson v. United States*,
    559 U.S. 133 (2010).............................................................. 6

*Leocal v. Ashcroft*,
    543 U.S. 1 (2004)..........................................................*passim*

*McLaughlin v. United States*,
    476 U.S. 16 (1986)............................................................. 11

*Miller v. Gammie*,
    335 F.3d 889 (9th Cir. 2003) .............................................*passim*

1

**Federal Cases (cont.)**

*Moncrieffe v. Holder,*
    133 S. Ct. 1678 (2013)..................................................................24

*Rendon v. Holder,*
    764 F.3d. 1077 (9th Cir. 2014) ...................................................22

*Sykes v. United States,*
    131 S. Ct. 2267 (2011)..................................................................13

*Taylor v. United States,*
    495 U.S. 575 (1990).......................................................................5

*United States v. Acosta,*
    470 F.3d 132 (2d Cir. 2006) ..........................................................6

*United States v. Alsop,*
    479 F.2d 65 (9th Cir. 1973).............................................8, 15, 21

*United States v. Amparo,*
    68 F.3d 1222 (9th Cir. 1995) ...............................................5, 14

*United States v. Aragon,*
    983 F.2d 1306 (4th Cir. 1993) ....................................................14

*United States v. Arena,*
    180 F.3d 380 (2d. Cir. 1999) ......................................................18

*United States v. Baza-Martinez,*
    464 F.3d 1010 (9th Cir. 2006) ......................................................5

*United States v. Bell,*
    2016 WL 344749 (N.D. Cal. Jan. 28, 2016)...............................14

*United States v. Boyd,*
    924 F.2d 945 (9th Cir. 1991) ......................................................11

*United States v. Chandler,*
    619 F. App'x 641 (9th Cir. Oct. 9, 2015)....................................24

*United States v. Chandler,*
    743 F.3d 648 (9th Cir. 2014) .............................12, 15, 23, 24

1    **Federal Cases (cont.)**

2    *United States v. Cruz-Rodriguez,*
3        625 F.3d 274 (5th Cir. 2010) ........................................................ 10

4    *United States v. Dixon,*
5        805 F.3d 1193 (9th Cir. 2015) ............................................... 6, 22, 23

6    *United States v. Dominguez-Moroyoqui,*
7        748 F.3d 918 (9th Cir. 2014) .................................................. 26, 27, 28

8    *United States v. Edmunson,*
        __ F. Supp. 3d __, 2015 WL 9311983 (D. Md. Dec. 30, 2015) ............................... 14

9    *United States v. Farmer,*
10       73 F.3d 836 (8th Cir. 1996) ........................................................ 17

11   *United States v. Fields,*
12       210 F.3d 386 (9th Cir. 2000) ........................................................ 1

13   *United States v. Foppe,*
14       993 F.2d 1444 (9th Cir. 1993) .................................................... 8, 21

15   *United States v. Gomez,*
16       690 F.3d 194 (4th Cir. 2012) ....................................................... 20

17   *United States v. Grajeda,*
18       581 F.3d 1186 (9th Cir. 2009) ....................................................... 5

19   *United States v. Harrington,*
        108 F.3d 1460 (D.C. Cir. 1997) ..................................................... 17

20   *United States v. Hopkins,*
21       703 F.2d 1102 (9th Cir. 1983) ....................................................... 9

22   *United States v. Iozzi,*
23       420 F.2d 512 (4th Cir. 1970) ....................................................... 18

24   *United States v. Jim,*
25       865 F.2d 211 (9th Cir. 1989) .................................................... 28, 29

26   *United States v. Jones,*
27       84 F.3d 1206 (9th Cir. 1996) ....................................................... 11

28

1

**Federal Cases (cont.)**

*United States v. Juvenile Female*,
  566 F.3d 943 (9th Cir. 2009) ...................................................... 25, 26, 29

*United States v. Kelley*,
  412 F.3d 1240 (11th Cir. 2005) ........................................................... 8

*United States v. Lattanaphom*,
  __ F. Supp. 3d __, 2016 WL 393545 (E.D. Cal. Feb. 1, 2016) .............................. 14

*United States v. Local 560 of the International Brotherhood of Teamsters,
  Chauffeurs, Warehousemen, and Helpers of America*,
  780 F.2d 267 (3d Cir. 1986) ............................................................ 18

*United States v. Martinez-Jimenez*,
  864 F.2d 664 (9th Cir. 1989) ........................................................ 9, 11

*United States v. McDougherty*,
  920 F.2d 569 (9th Cir. 1990) ....................................................... 12, 15

*United States v. Mendez*,
  992 F.2d 1488 (9th Cir. 1993) ................................................... *passim*

*United States v. Nedley*,
  255 F.2d 350 (3d Cir. 1958) ........................................................... 17

*United States v. Parnell*,
  14-30208 slip op. (9th Cir. April 12, 2016) ....................................... 9, 10

*United States v. Perez-Vargas*,
  414 F.3d 1282 (10th Cir. 2005) ............................................... 10, 19, 20

*United States v. Piccolo*,
  441 F.3d 1084 (9th Cir. 2006) .......................................................... 5

*United States v. Prince*,
  772 F.3d 1173 (9th Cir. 2014) ..................................................... 12, 15

*United States v. Rodriguez*,
  925 F.2d 1049 (7th Cir. 1991) ..................................................... 17, 18

*United States v. Sanchez*,
  914 F.2d 1355 (9th Cir. 1990) ..................................................... 27, 29

vi

1

**Federal Cases (cont.)**

*United States v. Serafin*,
562 F.3d 1105 (9th Cir. 2009) ......................................................... 6

*United States v. Spears*,
631 F.2d 114 (9th Cir. 1980) ........................................................ 30

*United States v.Thomas*,
21 F. App'x 705 (9th Cir. 2001) ..................................................... 2

*United States v. Thomas*,
417 F.3d 1053 (9th Cir. 2005) ........................................................ 3

*United States v. Torres-Miguel*,
701 F.3d 165 (4th Cir. 2012) .................................................. 5, 10

*United States v. Vela*,
624 F.3d 1148 (9th Cir. 2010) ..................................................... 29

*United States v. Villavicencio-Burruel*,
608 F.3d 556 (9th Cir. 2010) ....................................................... 20

*United States v. Vivas-Ceja*,
808 F.3d 719 (7th Cir. 2015) ....................................................... 13

*United States v. Werle*,
__ F.3d __, 2016 WL 828132 (9th Cir. Mar. 3, 2016) ...................... 15, 28

*United States v. Woodruff*,
122 F.3d 1185 (9th Cir. 1997) ................................................ 16, 29

*United States v. Woodrup*,
86 F.3d 359 (4th Cir. 1996) ...................................................... 8, 21

*United States v. Wright*,
215 F.3d 1020 (9th Cir. 2000) ..............................................*passim*

*United States v. Yockel*,
320 F.3d 818 (8th Cir. 2003) ......................................................... 8

*Webster v. Fall*,
266 U.S. 507 (1925)...................................................................... 29

vii

1

**Federal Cases (cont.)**

2

*Whyte v. Lynch*,
807 F.3d 463 (1st Cir. 2015)........................................................................... 10

3

4

**Federal Statutes**

5

18 U.S.C. § 16.................................................................................................*passim*

6

18 U.S.C. § 111...............................................................................................*passim*

7

18 U.S.C. § 924...............................................................................................*passim*

8

18 U.S.C. § 1951.............................................................................................*passim*

9

10

18 U.S.C. § 2113.............................................................................................*passim*

11

18 U.S.C. § 2114.................................................................................................. 17

12

28 U.S.C. § 2255.............................................................................................. 3, 30

13

U.S.S.G. § 2L1.2...................................................................................... 19, 20, 26

14

U.S.S.G. § 4B1.2.................................................................................................. 25

15

16

**State Statutes**

17

Cal. Penal Code § 211......................................................................................... 22

18

Cal. Penal Code § 422.................................................................................... 10, 20

19

**Other Authorities**

20

77 C.J.S. Robbery § 23....................................................................................... 17

21

Witkins Substantive Criminal Law.................................................................... 18

22

23

24

25

26

27

28

1

**TABLE OF EXHIBITS**

2

Exhibit A:    First Superseding Indictment (November 4, 1998, CR 35)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255

## I.  INTRODUCTION

Petitioner Calvin Thomas, by and through his attorney, Deputy Federal Public Defender Brianna Fuller Mircheff, hereby submits this motion to vacate, set aside, or correct his sentence, based on *Johnson v. United States*, 135 S. Ct. 2551 (2015). In *Johnson*, the Supreme Court held that the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e), is void for vagueness.  *Johnson*'s reasoning applies equally to the residual clause in 18 U.S.C. § 924(c)(3)(B). Therefore, in light of *Johnson*, Mr. Thomas's 45-year mandatory consecutive sentence under 18 U.S.C. § 924(c) was imposed in violation of the Constitution or the laws of the United States and exceeded the maximum authorized by law. Petitioner therefore requests that this Court grant this motion, vacate his current sentence, and re-sentence him.

## II.  PROCEDURAL HISTORY

### A.    Conviction and Sentencing

Mr. Thomas was convicted, following a jury trial, of: (1) armed bank robbery, in violation of 18 U.S.C. § 2113(a), (d) (Count 1); (2) interference with commerce by robbery ("Hobbs Act robbery"), in violation of 18 U.S.C. § 1951 (Count 3); (3) assaulting a federal officer with a deadly weapon, in violation of 18 U.S.C. § 111(a)(1), (b) (Count 5); and (4) three counts of using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts 2, 4, and 6). *United States v. Fields*, 210 F.3d 386, *1 n.3 (9th Cir. 2000) (Table). On December 16, 1997, he was sentenced to 610 months imprisonment under the then-mandatory Sentencing Guidelines—70 months on Counts 1, 3, and 5, each to be served concurrently, plus a mandatory consecutive 60 months on Count 2 (the first Section 924(c) conviction), 240 months on Count 4 (the

1

1   second Section 924(c) conviction), and 240 months on Count 6 (the final Section
2   924(c) conviction). (CR 131, 132.)[1]

3        Relevant to this application, Count 2 of the First Superseding Indictment charged
4   Mr. Thomas with violating Section 924(c) by knowingly using and carrying a firearm
5   "during, and in relation to a crime of violence, namely the armed robbery of [the United
6   California Savings Bank], Riverside, California" charged in Count 1. (Ex. A, First
7   Superseding Indictment, at 3.)  The Indictment charged Mr. Thomas in Count 4 with
8   violating Section 924(c) by knowingly using and carrying a handgun "during, and in
9   relation to a crime of violence: the armed robbery of [United Parcel Service], Riverside
10  California" charged in Count 3.  (Ex. A, at 5.)  Finally, the indictment charged Mr.
11  Thomas in Count 6 with violating Section 924(c) by knowingly using and carrying a
12  handgun "during and in relation to a crime of violence, namely the forcible assault of a
13  Special Agent of the FBI" charged in Count 5.  (Ex. A, at 7.)

14  **B.    Appeal, Resentencing, and Second Appeal**

15       Mr. Thomas appealed his convictions and sentence. The Ninth Circuit affirmed
16  his conviction, but determined that the district court had erred in applying a sentencing
17  enhancement to his case.  *Id.* at *2-*4.  The Court remanded for resentencing on that
18  basis.

19       At the resentencing hearing held on April 27, 2000, the district court re-imposed
20  the same sentence. Mr. Thomas appealed a second time, arguing that the court had
21  violated *Apprendi* by imposing consecutive sentences under Section 924(c). This time,
22  the Ninth Circuit affirmed. *United States v. Thomas*, 21 F. App'x 705 (9th Cir. 2001)
23  (Unpub. Disp.)

24

25       [1] Unless otherwise indicated, all citations to "CR" refer to the clerk's record in
26  CR 96-00006-RT, Mr. Thomas's underlying criminal case in this Court. Due to delays
    in receiving files from the district court archives and the inflexible deadlines applicable
27  to federal habeas petitions, counsel is filing this Motion without reviewing all of the
    documents that might be relevant to Mr. Thomas's claims. Should counsel receive
28  additional relevant documents, counsel will supplement the record.

2

**C.     Section 2255 Motion**

On February 28, 2002, Petitioner filed a Motion to Vacate his sentence pursuant to 28 U.S.C. § 2255, raising claims relating to the ineffective assistance of counsel. After an evidentiary hearing, the district court denied his Motion. *United States v. Thomas*, 417 F.3d 1053, 1056 (9th Cir. 2005). The Ninth Circuit affirmed, finding that he had not established prejudice. *Id* at 1059. Two judges concurred in the judgment, but stated that defense counsel's performance was constitutionally infirm. *Id.* at 1059-60 (Fletcher, J., concurring).

**D.     Second or Successive 2255 Motion**

The instant Motion is filed in conjunction with an application for leave to file a second or successive 2255 Motion, filed in the Ninth Circuit.

## III.  ARGUMENT

Under 28 U.S.C. § 2255(a), a defendant is entitled to a resentencing when his original sentence was imposed "in violation of the Constitution or laws of the United States," or is "in excess of the maximum authorized by law."  Petitioner is entitled to relief on all these grounds because under *Johnson v. United States*, 135 S. Ct. 2251 (2015), he is now serving illegal and unconstitutional career offender and Section 924(c) sentences.

**A.     Count Two Must Be Vacated because the Predicate Offense, Armed Bank Robbery, Is Not a Crime of Violence after *Johnson*.**

Section 924(c) provides for a series of graduated, mandatory consecutive sentences for using or carrying a firearm during and in relation to a "crime of violence." 18 U.S.C. § 924(c)(1)(A), (B).  The term "crime of violence," in turn, is defined as "an offense that is a felony and—"

> (A) has as an element the use, attempted use, or threatened use of physical
>     force against the person or property of another, or

3

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).  As used in this brief, subsection (A) is called the "force clause" and subsection (B) is called the "residual clause."

Here, Count Two of the Indictment charged Petitioner with violating Section 924(c) by knowingly using and carrying a firearm "during and in relation to a crime of violence, namely, [ ] armed robbery . . . in violation of Title 18, United States Code, Section 2113(a) and (d)."  (Ex. A at 3.)

In a 2000 case, the Ninth Circuit held that armed bank robbery was a crime of violence under the force clause of Section 924(c)(3)(A).  *United States v. Wright*, 215 F.3d 1020, 1028 (9th Cir. 2000).  The decision's analysis was limited, reasoning only "[a]rmed bank robbery qualifies as a crime of violence because one of the elements of the offense is a taking 'by force and violence, or by intimidation.'" *Id.* (citing 18 U.S.C. § 2113(a)).

There is much water under the bridge since *Wright* was decided, however, and intervening Supreme Court and en banc Ninth Circuit decisions have undermined *Wright's* reasoning that armed bank robbery was a crime of violence.  Specifically, the Supreme Court issued a series of cases redefining the boundaries of the force clause, such that armed bank robbery no longer satisfies that clause for two independent reasons. *Johnson*, moreover, removed the alternative ground on which armed bank robbery could have been deemed a crime of violence; that armed bank robbery qualified as a predicate crime of violence under the residual clause.  After *Johnson*, therefore, Petitioner no longer has a qualifying crime of violence supporting his Section 924(c) conviction and sentence.

4

1. **Armed Bank Robbery No Longer Qualifies as a Crime of Violence under the Force Clause.**

To determine whether a predicate offense qualifies as a "crime of violence" under § 924(c), this Court must use the categorical approach. *See United States v. Amparo*, 68 F.3d 1222, 1225 (9th Cir. 1995); *United States v. Piccolo*, 441 F.3d 1084, 1086-87 (9th Cir. 2006) ("[I]n the context of crime-of-violence determinations under § 924(c), our categorical approach applies regardless of whether we review a current or prior crime."); *see also Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013) (applying categorical approach in case under ACCA, 18 U.S.C. § 924(e)).  Under *Taylor*, only the statutory definitions—i.e., the elements—of the predicate crime are relevant to determine whether the conduct criminalized by the statute, including the most innocent conduct, qualifies as a "crime of violence." *Taylor v. United States*, 495 U.S. 575, 599-601 (1990).

Determination of whether a criminal offense is categorically a crime of violence is done by "assessing whether the 'full range of conduct covered by [the statute] falls within the meaning of that term.'" *United States v. Grajeda*, 581 F.3d 1186, 1189 (9th Cir. 2009) (citation omitted).  To do this, courts must look "at the least egregious end of [the. . . statute's] range of conduct." *United States v. Baza-Martinez*, 464 F.3d 1010, 1014 (9th Cir. 2006) (quoting *United States v. Lopez-Solis*, 447 F.3d 1201, 1206 (9th Cir. 2006)).  In other words, under the categorical approach, a prior offense can only qualify as a "crime of violence" if all of the criminal conduct covered by a statute— "including the most innocent conduct" —matches or is narrower than the "crime of violence" definition. *United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012).  If the statute punishes some conduct that would qualify as a crime of violence and some conduct that would not, it does not categorically constitute a crime of violence. *Grajeda*, 581 F.3d at 1189.  In a "narrow range of cases," if the statute is divisible as to a material element, then the court may apply the modified categorical approach by looking beyond the statutory elements to certain documents of conviction

1    to determine whether the defendant's conviction necessarily involved facts

2    corresponding to the generic federal offense.  *Descamps*, 133 S. Ct. at 2283-84.

3         Intervening Supreme Court and en banc Ninth Circuit precedent following

4    *Wright* holds that to be a categorical match to the terms of the force clause in Section

5    924(c), a state statute must require proof of both intentional conduct and violent force.

6    As to intentional conduct, in *Leocal v. Ashcroft*, 543 U.S. 1, 9-10 (2004), the Supreme

7    Court held that a conviction under a Florida statute prohibiting driving under the

8    influence was not a crime of violence under the identical force clause in 18 U.S.C.

9    Section 16(a) because the crime could be committed through mere negligence or even

10   accidental conduct.  An en banc panel of the Ninth Circuit then interpreted *Leocal* as

11   requiring that, "to constitute a federal crime of violence an offense must involve the

12   *intentional* use of force against the person or property of another."  *Fernandez-Ruiz v.*

13   *Gonzales*, 466 F.3d 1121, 1132 (9th Cir. 2006) (en banc) (emphasis added); *see also*

14   *United States v. Dixon*, 805 F.3d 1193, 1197 (9th Cir. 2015) (citing *Leocal* and holding

15   that the almost-identically worded force clause in the ACCA requires that "the use of

16   force must be intentional, not just reckless or negligent"); *United States v. Serafin*, 562

17   F.3d 1105, 1108 (9th Cir. 2009) (applying *Leocal*'s gloss on 18 U.S.C. § 16 to Section

18   924(c)(3)); *United States v. Acosta*, 470 F.3d 132, 134-35 (2d Cir. 2006) (same).

19        "Physical force" has the meaning given to it by *Leocal* and the Supreme Court's

20   2010 decision in *Johnson v. United States*, 559 U.S. 133, 140 (2010) (*Johnson I*).  In

21   *Leocal*, in addition to interpreting the *mens rea* requirement of Section 16(a), the

22   Supreme Court also held that the phrase "physical force" in that section requires a

23   "violent, active crime[]."  543 U.S. at 11.  The *Johnson I* Court expanded on that

24   definition, holding that the phrase "physical force" in ACCA's almost-identical force

25   clause defining "violent felony" means "*violent* force—that is, force capable of causing

26   physical pain or injury to another person."  *Johnson I*, 559 U.S. at 140.

27        A person violates the armed bank robbery statute if he, "by force and violence, or

28   by intimidation, takes or attempts to take, from the person or presence of another" the

                                         6

property of a bank and in so doing "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device." 18 U.S.C. § 2113(a), (d). Thus, the elements of the crime are

> (1) the defendant took money belonging to a bank, credit union, or savings and loan, (2) by using force and violence or intimidation, (3) the deposits of the institution were insured by the Federal Deposit Insurance Corporation ("FDIC"), and (4) in committing the offense, the defendant assaulted any person, or put in danger the life of any person by the use of a dangerous weapon.

*Wright*, 215 F.3d at 1028.

Armed bank robbery does not require an *intentional* threat of force, nor does it require a threat of *violent* force. As such, armed bank robbery is not a crime of violence under the force clause.

### a.      Armed Bank Robbery Does Not Require the *Intentional* Use or Threatened Use of Force.

The first reason armed bank robbery is categorically overbroad and cannot support a finding that a defendant's predicate offense is a crime of violence under the force clause is because the statute contains no requirement that a defendant have possessed any *mens rea* with respect to either his or her use of force and violence or intimidation, let alone that the defendant used force and violence or intimidation intentionally.

In *Carter v. United States*, 530 U.S. 255, 268 (2000), the Supreme Court held that bank robbery is a general intent crime.  That is, the defendant must have "possessed knowledge with respect to the *actus reus* of the crime." *Id.*  As an example of a hypothetical defendant who should not be punished under the statute, the *Carter* Court wrote that "Section 2113(a) certainly should not be interpreted to apply to the hypothetical person who engages in forceful taking of money while sleepwalking[.]" *Id.* at 269.  Following *Carter*, courts have held that the *actus reus* of bank robbery is the

taking of money and therefore, the statute requires a showing only that the defendant "knew he was physically taking money." *See United States v. Yockel*, 320 F.3d 818, 823 (8th Cir. 2003). Whether the defendant took money via an intentional use of force and violence or intimidation is "irrelevant." *Id.*; *see also United States v. Kelley*, 412 F.3d 1240, 1244 (11th Cir. 2005) ("[A] defendant can be convicted under section 2113(a) even if he did not intend for an act to be intimidating."). Thus, in *Yockel*, the Eighth Circuit affirmed the district court's exclusion at trial of any evidence regarding whether the defendant intended to use force and violence or intimidation. 320 F.3d at 823.

Yockel and Kelley are in accord with this Circuit's longstanding, pre-*Carter* case law which also holds that, at least in cases involving intimidation, whether a defendant "specifically intended to intimidate . . . is irrelevant." *United States v. Foppe*, 993 F.2d 1444, 1451 (9th Cir. 1993). This holding stems from the court's conclusion that the definition of taking, or attempting to take "'by intimidation' means willfully to take, or attempt to take, in such a way that would put an ordinary, reasonable person in fear of bodily harm." *United States v. Alsop*, 479 F.2d 65, 67 n.4 (9th Cir. 1973). Because this definition focuses on the effect of the accused's actions on the victim, "[t]he determination of whether there has been an intimidation should be guided by an objective test focusing on the accused's actions," *not* his or her intent. *Id.*; *see also United States v. Woodrup*, 86 F.3d 359, 363 (4th Cir. 1996) ("The intimidation element of § 2113(a) is satisfied if 'an ordinary person in the [victim's] position reasonably could infer a threat of bodily harm from the defendant's acts,' whether or not the defendant actually intended the intimidation."). It makes no difference in the analysis that a defendant in an armed bank robbery case uses a dangerous weapon in the course of committing the offense: whether he intentionally used the weapon is simply not an element of the crime. In short, a defendant may be convicted of armed bank robbery even though he did not intend to put another in fear, but merely did some act involving a dangerous weapon that would put an ordinary,

8

reasonable person in fear of bodily harm.  *See United States v. Martinez-Jimenez*, 864 F.2d 664, 666-67 (9th Cir. 1989) (Section 2113(d) "focuses on the harms created, not the manner of creating the harm.").

As a statute must require the intentional use of force in order to match the definition of "use of force" in Section 924(c)'s force clause following *Leocal* and *Fernandez-Ruiz*, and because Section 2113(a), (d) requires no such showing, *Wright's* conclusion that bank robbery is a crime of violence under the force clause is no longer good law.  *See Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (en banc) ("[T]he issues decided by the higher court need not be identical in order to be controlling.  Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable.").  Following *Leocal* and *Fernandez-Ruiz*, federal armed bank robbery cannot be a crime of violence under the force clause.

### b.    Armed Bank Robbery Does Not Require the Use or Threatened Use of *Violent* Force.

Moreover, armed bank robbery does not require the use or threat of *violent* physical force. With respect to the use-of-force-and-violence-or-intimidation element, nothing in the term "intimidation" requires a threat of *violent* physical force. Intimidation is satisfied even where there is no explicit threat at all, let alone the threat of violent force.  For example, a simple demand for money from a bank teller will support a bank robbery conviction.  *See United States v. Hopkins*, 703 F.2d 1102, 1103 (9th Cir. 1983) ("Although the evidence showed that Hopkins spoke calmly, made no threats, and was clearly unarmed, we have previously held that 'express threats of bodily harm, threatening body motions, or the physical possibility of concealed weapon[s]' are not required for a conviction for bank robbery by intimidation." (quoting *United States v. Bingham*, 628 F.2d 548, 549 (9th Cir.1980))). But, as the Ninth Circuit recently held, an "uncommunicated willingness or readiness to use [physical] force . . . is not a threat to do so." *United States v. Parnell*, 14-30208 slip op.

at 8-9 (9th Cir. April 12, 2016). A threat of physical force, as would satisfy the force clause "requires some outward expression or indication of an intention to inflict pain, harm or punishment." *Id.* Federal bank robbery has no such requirement.

Further, the Ninth Circuit's definition of intimidation does not require a showing of the use or threatened use of violent physical force because placing a person "in fear of bodily harm" does not necessarily require the use or threatened use of violent physical force. On this matter, the Fourth Circuit has "recognized that, to constitute a predicate crime of violence justifying a sentencing enhancement under the Guidelines, a [predicate] offense must constitute a use or threatened use of violent force, not simply result in physical injury or death." *Torres-Miguel*, 701 F.3d at 169; *Accord United States v. Cruz-Rodriguez*, 625 F.3d 274, 276 (5th Cir. 2010); *Chrzanoski v. Ashcroft*, 327 F.3d 188, 194 (2d Cir. 2003) ("there is 'a difference between causation of an injury and in injury's causation by the "use of physical force"'"); *United States v. Perez-Vargas*, 414 F.3d 1282, 1287 (10th Cir. 2005); *Whyte v. Lynch*, 807 F.3d 463, 469-72 (1st Cir. 2015). For example, a defendant could commit bank robbery through intimidation by threatening to poison the teller, but this would not constitute the threatened use of violent physical force, even though it would result in the teller being in fear of bodily harm. *Cf. Torres-Miguel*, 701 F.3d at 168-69 (holding that California's criminal threats statute does not constitute a crime of violence because "a defendant can violate statutes like § 422(a) by threatening to poison another, which involves no use or threatened use of force."); *Matter of Guzman-Polanco*, 26 I. & N. Dec. 713 (BIA 2016) ("Caesar's death at the hands of Brutus and his fellow conspirators was undoubtedly violent; the death of Hamlet's father at the hands of his brother, Claudius, by poison, was not.") (quoting *Rummel v. Estelle*, 445 U.S. 263, 282 n.27 (1980)).

With respect to the deadly weapon element of Section 2113(d), a defendant may be found guilty of armed bank robbery without engaging in conduct that involves the use or threat of violent physical force. For example, a defendant's mere display of or

10

reference to possession of a gun, without making any threat to use the gun, is sufficient to sustain a conviction under section 2113(d).  *See United States v. Jones*, 84 F.3d 1206, 1211 (9th Cir. 1996); *McLaughlin v. United States*, 476 U.S. 16, 17-18 (1986); *Martinez-Jimenez*, 864 F.2d at 666.

Moreover, a defendant may be convicted of armed bank robbery even though he displays or refers only to an unloaded or inoperable firearm, or even a toy resembling a firearm.  *See McLaughlin*, 476 U.S. 16, 17-18 (1986) (unloaded gun); *Martinez-Jimenez*, 864 F.2d at 666-67 (inoperable gun, toy gun); *see also United States v. Boyd*, 924 F.2d 945, 947-48 (9th Cir. 1991) (road flare qualifies as a dangerous weapon). This conduct does not involve the use or threatened use of violent force.  In *McLaughlin*, the Supreme Court reasoned that an unloaded gun qualified as a dangerous weapon within the meaning of Section 2113(d) because "a gun is an article that is typically and characteristically dangerous . . . and the law reasonably may presume that such an article is always dangerous even though it may not be armed at a particular time or place" and because "the display of a gun instills fear in the average citizen; as a consequence, it creates an immediate danger that a violent response will ensue."  476 U.S. at 17-18.  In other words, the *McLaughlin* court concluded that a robber's use of an unloaded gun could be considered to put in danger another person's life not because the robber could actually use the gun or because the gun actually posed a threat of violence against anyone in the bank but merely because it was a reasonable position for the law to take that all guns are dangerous, since as a general matter guns often are dangerous.  The Court also concluded that a robber's use of an unloaded gun could put in danger another person's life not because the robber actually used or threatened to use the gun in a violent, active way but only because others who saw the gun might *themselves* react in a violent way.  In the words of the *Martinez-Jimenez* court, "[t]he *McLaughlin* opinion recognizes that the dangerousness of a device used in a bank robbery is not simply a function of its potential to injure people directly.  Its dangerousness results from the greater burdens that it imposes upon victims and law

11

enforcement officers."  864 F.3d at 666.  As these cases make clear, defendants can be, and indeed many have been, convicted of armed bank robbery without using or threatening to use violent force.

For these reasons, federal armed bank robbery does not qualify as a crime of violence under the force clause of Section 924(c).  The contrary holding in *Wright* is clearly irreconcilable with *Johnson I* and *Leocal*.  *See Miller*, 335 F.3d at 899-900.

## 2. Following *Johnson*, Armed Bank Robbery Does Not Qualify as a Crime of Violence under the Residual Clause because that Clause Is Void for Vagueness.

Until *Johnson*, defendants like Petitioner had little motivation to challenge *Wright's* force clause holding, knowing that their armed bank robbery predicate would likely still be deemed a crime of violence under Section 924(c)'s residual clause. Indeed, prior to *Johnson*, the Ninth Circuit had held that various state robbery crimes were crimes of violence under the residual clause of several crime-of-violence definitions.  *See, e.g., United States v. Prince*, 772 F.3d 1173, 1176 (9th Cir. 2014) (finding that California second degree robbery is a violent felony under the residual clause of ACCA, because it "certainly" is the kind of crime that presents a serious potential risk of physical injury to another); *United States v. Chandler*, 743 F.3d 648, 652-55 (9th Cir. 2014) (Nevada conspiracy to commit robbery is a violent felony under the residual clause), *remanded pursuant to Johnson*, 743 F.3d 648 (9th Cir. 2015); *see also United States v. McDougherty*, 920 F.2d 569, 574 & n.3 (9th Cir. 1990) ("Clearly then, robbery as defined in California falls under 18 U.S.C. 16(b) as a felony that 'by its nature, involves a substantial risk' that physical force may be used"; interpreting an earlier version of the career-offender residual clause, but stating that the "result . . . would be no different" under the present version of the guideline).  *Johnson*, however, removed this alternative ground of justifying Petitioner's sentence.

In *Johnson*, the Supreme Court declared the residual clause of the ACCA to be "unconstitutionally vague" because the "indeterminacy of the wide-ranging inquiry

12

required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." *Johnson*, 135 S. Ct. at 2557. Thus, the Supreme Court concluded, "[i]ncreasing a defendant's sentence under the clause denies due process of law." *Id*. The Supreme Court held the residual clause "vague in all its applications," *id*. at 2561, and overruled its contrary decisions in *James v. United States*, 550 U.S. 192 (2007), and *Sykes v. United States*, 131 S. Ct. 2267 (2011). *Johnson*, 135 S. Ct. at 2562-63.

The holding in *Johnson* invalidating the residual clause of the ACCA applies equally to the residual clause of Section 924(c). In *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), the Ninth Circuit held that the identically worded definition of a "crime of violence" in the Immigration and Nationality Act (INA), 8 U.S.C. § 1101(a)(43)(F), is unconstitutionally vague. *Dimaya*, 803 F.3d at 1111. The INA defines a "crime of violence" by reference to the definition in 18 U.S.C. Section 16(b). Section 16(b), like Section 924(c)(3), has a force clause and a residual clause—indeed, the provisions are identical. They each define "crime of violence" as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16; 18 U.S.C. § 924(c)(3).

Although the language of Section 16(b), as incorporated into the INA, is not identical to that of ACCA's residual clause, the Ninth Circuit concluded that Section 16(b) suffered from the same constitutional defects identified in *Johnson*, and was therefore unconstitutionally vague. *Dimaya*, 803 F.3d at 1114-17; *see also United States v. Vivas-Ceja*, 808 F.3d 719, 722-23 (7th Cir. 2015) (same). Because both

13

statutes require a consideration of what kind of conduct the "ordinary case" of the crime involves, and both statutes left uncertainty about the amount of risk required, the Ninth Circuit reasoned that Section 16(b), like ACCA's residual clause, produced too much unpredictability and arbitrariness to comport with due process. *Dimaya*, 803 F.3d at 1116-17.

The same is true of the residual clause in Section 924(c)(3)(B), which the Ninth Circuit has recognized is "identical" to Section 16(b)'s residual clause. *See United States v. Amparo*, 68 F.3d 1222, 1226 (9th Cir. 1995); *Delgado-Hernandez v. Holder*, 697 F.3d 1125, 1130 (9th Cir. 2012). For interpretive purposes, the Ninth Circuit has treated Section 16(b) as the "equivalent" of Section 924(c)(3). *See United States v. Mendez*, 992 F.2d 1488, 1492 (9th Cir. 1993); *Amparo*, 68 F.3d at 1226 (relying on *United States v. Aragon*, 983 F.2d 1306 (4th Cir. 1993), a Section 16(b) case, to interpret Section 924(c)(3)(B)). At least three district courts have squarely held that Section 924(c)(3)'s residual clause is unconstitutionally vague after *Johnson*. *See United States v. Lattanaphom*, __ F. Supp. 3d __, 2016 WL 393545, at *3-6 (E.D. Cal. Feb. 1, 2016); *United States v. Bell*, 2016 WL 344749, at *12-13 (N.D. Cal. Jan. 28, 2016); *United States v. Edmunson*, __ F. Supp. 3d __, 2015 WL 9311983, at *3-5 (D. Md. Dec. 30, 2015) (as amended).  This Court should likewise conclude that Section 924(c)(3)(B) is unconstitutionally vague and cannot be used to support Petitioner's Section 924(c) conviction and sentence.

Federal armed bank robbery categorically is not a crime of violence under the force clause of Section 924(c).  And *Johnson* eliminated the residual clause.  As such, that provision can no longer serve as an alternative basis upon which to hold that Petitioner's conviction is a crime of violence.  In short, following *Johnson*, Petitioner's

14

1  conviction under 18 U.S.C. § 2113(a), (d) is not a crime of violence for purposes of

2  Section 924(c).[2]

3      After *Johnson*, however, Hobbs Act robbery is not a crime of violence and

4  therefore Petitioner's conviction for Hobbs Act robbery cannot support his Section

5  924(c) conviction and sentence.

6  **B.    Following *Johnson*, Hobbs Act Robbery is Not a Crime of Violence**

7        **under the Residual Clause because that Clause Is Void for Vagueness.**

8        Prior to *Johnson*, the Ninth Circuit had long held that various robbery crimes --

9  including Hobbs Act robbery -- were crimes of violence under the residual clause of

10  several crime-of-violence definitions.  *See, e.g., United States v. Mendez*, 992 F.2d

11  1488, 1491 (9th Cir. 1993) (finding Hobbs Act robbery to be a crime of violence under

12  the residual clause). *United States v. Prince*, 772 F.3d 1173, 1176 (9th Cir. 2014)

13  (finding that California second degree robbery is a violent felony under the residual

14  clause of the Armed Career Criminal Act, because it "certainly" is the kind of crime

15  that presents a serious potential risk of physical injury to another); *United States v.

16  Chandler*, 743 F.3d 648, 652-55 (9th Cir. 2014) (Nevada conspiracy to commit robbery

17  is a violent felony under the residual clause), *remanded pursuant to Johnson*, 743 F.3d

18  648 (9th Cir. 2015); *see also United States v. McDougherty*, 920 F.2d 569, 574 & n.3

19  

20      [2] It should be noted that armed bank robbery is indivisible as between "force and
violence" and "intimidation" because these are merely different means by which a
21  defendant can commit the offense.  More specifically, the jury is not called upon to
parse out and unanimously agree whether the taking was (a) by force and violence or
22  (b) by intimidation.  *See United States v. Wright*, 215 F.3d 1020, 1028 (9th Cir. 2000)
("[O]ne of the elements of the offense is a taking 'by force and violence, or by
23  intimidation.'" (quoting § 2113(a))); *United States v. Alsop*, 479 F.2d 65, 66 (9th Cir.
1973) ("That the statute and the indictment use the disjunctive phrase 'by force and
24  violence, or by intimidation' does not mean the indictment is duplicitous.  Only one
offense was charged." (citation omitted)); *see also* Ninth Cir. Model Criminal Jury
25  Instructions § 8.162 (2015) (stating the elements of bank robbery, which include using
"force and violence or intimidation").  Because the statute is indivisible as to this
26  required element, the modified categorical approach is inapplicable. *See Descamps*,
133 S. Ct. 2276 (2013); *United States v. Werle*, __ F.3d __, 2016 WL 828132, *4 (9th
27  Cir. Mar. 3, 2016) ("If a statute is overinclusive and indivisible as to any required
element, the modified categorical approach cannot be applied to that statute.").

28

(9th Cir. 1990) ("Clearly then, robbery as defined in California falls under 18 U.S.C. 16(b) as a felony that 'by its nature, involves a substantial risk' that physical force may be used"; interpreting an earlier version of the career-offender residual clause, but stating that the "result . . . would be no different" under the present version of the guideline). As set out above, however, *Johnson* rendered the residual clause in Section 924(c) invalid.

Petitioner's conviction and sentence for Section 924(c) (Count Four) cannot be salvaged under the force clause because Hobbs Act robbery does not have "as an element the use, attempted use, or threatened use of physical force against the person or property of another," 18 U.S.C. § 924(c)(3)(A). "In a Hobbs Act robbery prosecution, the government is required to prove two things: (1) that the defendant either committed or attempted to commit a robbery, and (2) a nexus between the defendant's acts and interstate commerce." *United States v. Woodruff*, 122 F.3d 1185, 1185 (9th Cir. 1997). The Hobbs Act defines "robbery" as follows:

> (1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1).

Because Hobbs Act robbery does not necessarily require the use, attempted use, or threatened use of *violent* physical force, nor does it necessarily require the *intentional* use or threat of physical force, it is not a crime of violence under the force clause.

**1.   Hobbs Act Robbery Does Not Necessarily Require the Use or Threatened Use of *Violent* Physical Force.**

The first reason Petitioner's conviction is not a crime of violence under the force clause is because Hobbs Act robbery does not require the use or threatened use of *violent* physical force. The sheer breadth of conduct penalized by Hobbs Act robbery is apparent from the crime's definition; the statute encompasses robberies accomplished "by means of actual or threatened force, or violence, or fear of injury, immediate or future, to [a victim's] person or property, or property in his custody or possession . . ." With each of the statute's attempts to capture more conduct, the statute becomes more and more problematic for crime-of-violence purposes.

First, Hobbs Act robbery includes taking "by means of . . . force." The term "force" must be considered in light of the common law roots of Hobbs Act robbery; the statute is defined "in terms consistent with the traditional common-law definition" of robbery. *See United States v. Farmer*, 73 F.3d 836, 842 (8th Cir. 1996); *United States v. Nedley*, 255 F.2d 350, 357 (3d Cir. 1958) ("'Robbery' under the Hobbs Act, is common law robbery."); *see also United States v. Harrington*, 108 F.3d 1460, 1471 (D.C. Cir. 1997). Common-law robbery requires less than violent force; it requires only that amount of force necessary to accomplish the taking of the property. 77 C.J.S. Robbery § 23 ("The amount or degree of force requisite to robbery is such force as is actually sufficient to overcome the victim's resistance. If the force used is sufficient to overcome resistance, the particular degree of violence employed is immaterial as an element of the crime.").  Accordingly, even Hobbs Act robbery committed "by means of . . . force" does not necessarily satisfy the generic definition of force announced in *Leocal* and *Johnson I*; that is, violent, physical force capable of causing physical pain or injury.

*United States v. Rodriguez*, 925 F.2d 1049 (7th Cir. 1991), is illustrative on this point. In the context of robbery of a letter carrier "using force or intimidation," 18 U.S.C. § 2114, the Court relied on robbery's common law roots to say that a conviction could be sustained even though "the amount of force or violence . . .was rather

minimal." There, the defendant had pulled on the key chain connected to the victim's clothing in order to steal his keys. *Id.* at 1052. This constituted robbery because, as the courts at common law had found, robbery can be sustained "when the item taken is 'so attached to the person or his clothes as to require some force to effect its removal.'" *Id.*; Witkins Substantive Criminal Law, Robbery § 20.3 (the pickpocket who "jostles the owner" or removes an item attached to the person's clothing has committed common law robbery by force). Because Hobbs Act robbery, like robbery of a letter carrier, can be committed by any amount of force necessary to accomplish the taking, it does not necessarily require the use of violent force.

Second, the plain language of the Hobbs Act robbery statute provides that the offense can be committed by placing another in "fear of injury." But injury need not be physical injury: "The concept of 'property' under the Hobbs Act is an expansive one" that includes "intangible assets, such as rights to solicit customers and to conduct a lawful business." *United States v. Arena*, 180 F.3d 380, 392 (2d. Cir. 1999) (citing 18 U.S.C. § 1951(a) and interpreting Hobbs Act robbery definition that includes threats of physical violence against "persons 'or property'"), *abrogated in part on other grounds by Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 403 n.8 (2003); *see also United States v. Iozzi*, 420 F.2d 512, 514 (4th Cir. 1970) (sustaining conviction under Hobbs Act when union president threatened "to slow down or stop construction projects unless his demands were met."); *United States v. Local 560 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America*, 780 F.2d 267, 281 (3d Cir. 1986) (noting that the circuits to consider the issue "are unanimous in extending Hobbs Act to protect intangible, as well as tangible property"). Thus, Hobbs Act robbery can be committed via threats to cause a devaluation of some economic interest. Such threats to economic interests are certainly not threats of "violent force."

Third, even to the extent that some violations of Hobbs Act robbery may involve physical injury, not all physical injuries are the result of "violent force." As several

18

circuits have acknowledged, there are many ways in which physical injury—even death—can result without the use of "violent force."

The Second Circuit addressed a similar issue in *Chrzanoski v. Ashcroft*, 327 F.3d 188 (2d Cir. 2003).  At issue in that case was whether a prior Connecticut conviction for third-degree assault qualified as a "crime of violence" under the force clause in 18 U.S.C. Section 16.  The Connecticut statute "require[s] the state to prove that the defendant had intentionally caused physical injury."  *Id.* at 193.  Nonetheless, the Second Circuit held that the statute does not constitute a crime of violence because there is a difference between causation of an injury, which is all that the Connecticut statute required, and an injury's causation by the use of physical force.  *Id.* at 194.  The Second Circuit explained that "an individual could be convicted of intentional assault in the third degree for injury caused not by physical force, but by guile, deception, or even deliberate omission."  *Id.* at 195.  Therefore, the court concluded, "the intentional causation of injury does not necessarily involve the use of force."  *Id.*  The Second Circuit elaborated by stating: "human experience suggests numerous examples of intentionally causing physical injury without the use of force, such as a doctor who deliberately withholds vital medicine from a sick patient," and reasoned that a defendant could conceivably commit Connecticut third-degree assault by placing a tranquilizer in the victim's drink and thereby causing physical injury.  *Id.* at 195-96.

The Tenth Circuit engaged in a similar analysis of a statute in the context of the "crime of violence" definition in U.S.S.G. Section 2L1.2.  In *United States v. Perez-Vargas*, 414 F.3d 1282 (10th Cir. 2005), the Tenth Circuit concluded that although the Colorado third-degree assault statute at issue there required an act causing bodily injury, conviction under the state did not necessarily require the use or threatened use of physical force.  *Id.* at 1287.  The Tenth Circuit noted that "several examples of third degree assault . . . would not use or threaten the use of physical force:  . . . intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals."  *Id.* at 1286.  The court therefore held that Colorado

19

third-degree assault was not a crime of violence under Section 2L1.2. *Id.* at 1287; *see also United States v. Gomez*, 690 F.3d 194, 201 (4th Cir. 2012) (child abuse statute which required "sustaining physical injury to child" can be violated "by an affirmative act or by neglecting to act, neither of which necessarily requires the use of physical force against the child").

Similarly, Hobbs Act robbery does not require the use or threatened use of "violent force" because it can be committed simply by attempting to put another in "fear of injury," without any showing that the fear resulted from the use or threatened use of physical force. 18 U.S.C. § 1951(b)(1).  Hobbs Act robbery thus differs in an important respect from offenses that require *both* causation of fear of injury *and* a threatened use of physical force that caused that fear.  *Cf. United States v. Villavicencio-Burruel*, 608 F.3d 556, 563 (9th Cir. 2010) (holding that conviction under California Penal Code Section 422(a) is categorically a crime of violence because its elements "*necessarily* include a threatened use of physical force 'capable of causing physical pain or injury to another person.'") (emphasis added).  Indeed, a defendant can place another in fear of injury by threatening to poison that person, to expose that person to hazardous chemicals, to place a barrier in front of the person's car, to lock the person up in the car on a hot day, to lock that person at an abandoned site without food or shelter.  None of these scenarios constitutes "violent force."

Because the full range of conduct covered by the Hobbs Act robbery statute does not require "violent force" against a person or property,  Hobbs Act robbery cannot qualify as a "crime of violence" under Section 924(c)(3)'s force clause.

## 2.     Hobbs Act Robbery Does Not Necessarily Require the *Intentional* Use or Threatened Use of Physical Force.

Second, Hobbs Act robbery is not a "crime of violence" under the force clause because it can be committed by putting someone in "fear of injury," which can be done without intentionally threatening to use physical force.  Cases interpreting the term "intimidation" in the federal bank robbery statute, 18 U.S.C. § 2113(a), are instructive

20

1    in assessing whether Hobbs Act robbery involving a "fear of injury" necessarily

2    requires the intentional use of force because "intimidation" requires the same act as

3    "fear of injury" under the Hobbs Act. *See United States v. Woodrup*, 86 F.3d 359, 363-

4    64 (4th Cir.1996) ("The Hobbs Act uses the phrase 'fear of injury' rather than

5    'intimidation,' but the terms are functionally equivalent, as the test for intimidation is

6    'whether an ordinary person ... reasonably could infer a threat of bodily harm from

7    defendant's acts.'"). With respect to federal bank robbery by intimidation, the Ninth

8    Circuit has held that "[t]he determination of whether there has been an intimidation

9    should be guided by an objective test focusing on the accused's actions . . . .  To take,

10   or attempt to take, 'by intimidation' means willfully to take, or attempt to take, in such

11   a way that would put an ordinary, reasonable person in fear of bodily harm." *United*

12   *States v. Alsop*, 479 F.2d 65, 67 n.4 (9th Cir. 1973).  Whether the defendant

13   "specifically intended to intimidate . . . is irrelevant." *United States v. Foppe*, 993 F.2d

14   1444, 1451 (9th Cir. 1993); *see also United States v. Woodrup*, 86 F.3d 359, 363 (9th

15   Cir. 1996) ("The intimidation element of § 2113(a) is satisfied if 'an ordinary person in

16   the [victim's] position reasonably could infer a threat of bodily harm from the

17   defendant's acts,' whether or not the defendant actually intended the intimidation.").  In

18   other words, a defendant may be convicted of federal bank robbery even though he did

19   not intend to put another in fear of injury.  It is enough that the victim reasonably fears

20   injury from the defendant's actions—whether or not the defendant actually intended to

21   create that fear.

22        In this way, Section 1951(b)(1)'s "fear of injury" element, like the federal bank

23   robbery statute, criminalizes conduct that does not require a showing of an intentional

24   threat of physical force.  For this additional reason, Hobbs Act robbery fails to qualify

25   as a "crime of violence."

26                    **3.    Hobbs Act Robbery Is an Indivisible Offense.**

27        It should be noted that Hobbs Act robbery is not a divisible offense. *See*

28   *Descamps v. United States*, 133 S. Ct. 2276 (2013) (in ACCA case, holding that

                                          21

1    "sentencing courts may not apply the modified categorical approach when the crime of

2    which the defendant was convicted has a single, indivisible set of elements").  To be

3    divisible, a statute must contain "multiple, alternative elements of functionally separate

4    crimes." *Rendon v. Holder*, 764 F.3d. 1077, 1085 (9th Cir. 2014). A statute is not

5    divisible merely because it is worded in the disjunctive.  *Id.* at 1086.  Rather, a court

6    must determine whether a disjunctively-worded phrase supplies "alternative elements,"

7    which are essential to a jury's finding of guilt, or "alternative means." which are not.

8    *Id.* at 1085-86.  That is, if a statute contains alternative elements, a prosecutor "must

9    generally select the relevant element from its list of alternatives.  And the jury, as

10   instructions in the case will make clear, must then find that element, unanimously and

11   beyond a reasonable doubt." *Descamps*, 133 S. Ct. at 2290.  "But if a statute contains

12   only alternative means, a jury need not agree as to *how* the statute was violated, only

13   that it was." *United States v. Dixon*, 805 F.3d 1193, 1198 (9th Cir. 2015).

14        Although Hobbs Act robbery can be committed in multiple ways—"*by means of*

15   actual or threatened force, or violence, or fear of injury, immediate or future, to his

16   person or property," 18 U.S.C. § 1951(b)(1) (emphasis added)—these disjunctive terms

17   are merely "means," as the statute itself indicates, not alternative elements on which a

18   jury must unanimously agree.  Jurors are never asked to decide which one of these

19   phrases served as the basis for a Hobbs Act conviction.  Specifically, jurors are not

20   asked to determine whether the defendant took the property in question by means of (1)

21   actual force, (2) threatened force, (3) violence, or (4) fear of injury.  Further, unanimity

22   is not required on the question of whether fear or injury was future or immediate or as

23   to a person or property.

24        In *Dixon*, the Ninth Circuit held that the California robbery statute, Cal. Penal

25   Code § 211, which contains disjunctive phrases similar to those contained in the Hobbs

26   Act robbery definition ("person or immediate presence," "force or fear"), contains only

27   alternative means and is, therefore, not divisible. *Dixon*, 805 F.3d at 1198.  The Ninth

28   Circuit explained that the "disjunctively worded phrases in the statute and jury

22

instructions are alternative means, not alternative elements. To return a guilty verdict
. . ., a jury must find that the elements are satisfied, but jurors need not agree on the
disjunctively worded alternatives." *Id.* Likewise, the Hobbs Act robbery statute
contains alternative means, not elements, and is therefore also indivisible. As a result,
in determining whether Hobbs Act robbery qualifies as a "crime of violence" under the
force clause, this Court must apply only the categorical approach, and not the modified
categorical approach.

### 4. *Mendez* Is Not Controlling because its Brief Reference to Hobbs Act Robbery Has Been Effectively Overruled.

The Ninth Circuit's decision in *United States v. Mendez*, 992 F.2d 1488 (9th Cir.
1993), is not controlling on the question of whether Hobbs Act robbery is a crime of
violence under the force clause because its precedential value has been undercut by
intervening higher authority. *See Miller v. Gammie*, 335 F.3d 889, 893, 899-900 (9th
Cir. 2003) (en banc). In *Mendez*, the Ninth Circuit concluded that Hobbs Act
conspiracy was a crime of violence under Section 924(c)(3)(B)'s residual clause. 992
F.2d at 1491. In the course of its analysis, the court reasoned that Hobbs Act *robbery*
was a crime of violence, possibly under the force clause, because it "contain[ed] [an]
element of 'actual or threatened force, or violence.'" *Id.* In *United States v. Chandler*,
743 F.3d 648 (9th Cir. 2014), *vacated*, 135 S. Ct. 2926 (2015), all three judges on the
Ninth Circuit panel questioned the "reasoning and continuing validity" of *Mendez* in
light of intervening case law on ACCA and the categorical approach. *Chandler*, 743
F.3d at 657-68 (Bybee, J., concurring). In doing so, the concurrence noted that *Mendez*
began its analysis by purporting to use the categorical approach. The concurrence then
reasoned, "This was a good start, but we then broadly declared, intuitively, but without
any analysis of the elements of robbery as defined in the Hobbs Act, that '[r]obbery
indisputably qualifies as a crime of violence.'" *Chandler*, 743 F.3d at 658 (quoting
*Mendez*, 992 F.2d at 1491). In this way, the concurring opinion in *Chandler* cast doubt

23

on the validity of *Mendez*'s premise—that Hobbs Act robbery was a crime of violence under the force clause—and rightfully so.[3]

The reasoning underlying the Ninth Circuit's cursory analysis of Hobbs Act robbery in *Mendez* is clearly irreconcilable with higher intervening authority. Since *Mendez* was decided, the Supreme Court has made clear that courts conducting the categorical approach must "presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized . . . ." *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013) (quoting *Johnson*, 559 U.S.at 137). But the Ninth Circuit in *Mendez* did not "focus on the minimum conduct criminalized by the . . . statute," as the Supreme Court has since instructed, *see id.* Rather, by singling out the possibility of committing a Hobbs Act robbery through "actual or threatened force, or violence," the Ninth Circuit considered the *maximum* conduct criminalized by the statute. *See Mendez*, 992 F.2d at 1491, 1492. Notably, the *Mendez* court did not address whether the full range of conduct covered by the statute—including putting someone in "fear of injury"—has "as an element the use, attempted use, or threatened use of physical force against the person or property of another," 18 U.S.C. § 924(c)(3)(A).

Moreover, as discussed above, the Supreme Court's 2004 decision in *Leocal* and 2010 decision in *Johnson*, as well as the 2006 en banc Ninth Circuit decision in *Fernandez-Ruiz* establish that in order to be a categorical match to the force clause of Section 924(c), a statute must penalize the intentional use or threatened use of violent, physical force. But the Ninth Circuit in *Mendez* did not consider whether Hobbs Act robbery necessarily satisfies these requirements in every instance. It did not consider, for example, as discussed *supra*, the fact that Hobbs Act robbery can be committed by

---

[3] In *Chandler*, the Supreme Court granted certiorari, vacated the judgment, and remanded for further consideration in light of *Johnson*, 135 S. Ct. 2926 (2015), and on remand, the Ninth Circuit granted the parties' joint motion for vacatur of the sentence and a remand for resentencing. *United States v. Chandler*, 619 F. App'x 641 (9th Cir. Oct. 9, 2015) (unpublished order).

24

1    unintentionally putting someone in fear of injury or by the use or threatened use of

2    nonviolent force.

3        In short, since *Mendez* was decided, the Supreme Court and an en banc panel of

4    the Ninth Circuit have clarified both the mode of analysis required by the categorical

5    approach, as well as the substantive standards of force and mens rea required for a

6    "crime of violence."  Because *Mendez*'s reasoning and underlying premise are clearly

7    irreconcilable with this higher intervening authority, the decision has been effectively

8    overruled and does not prevent this Court from granting relief on Petitioner's Section

9    924(c) claim.  *See Miller*, 335 F.3d at 899-900.

10   **C.   Petitioner's 924(c) Conviction for Assault on a Federal Officer Is Also**

11   **Invalid After *Johnson*.**

12       Subsequent to Mr. Thomas's conviction, the Ninth Circuit had held that a

13   violation of Section 111(b) qualifies as a crime of violence under the identically

14   worded residual clause enumerated in 18 U.S.C. Section 16(b), because "the two

15   variants on this crime [the use of a deadly weapon or the causation of bodily injury]

16   will always involve a substantial risk that physical force against the person may be

17   used."  *United States v. Juvenile Female*, 566 F.3d 943, 948 (9th Cir. 2009). Yet again,

18   the residual clause in 924(c) is no longer good law, and as such, cannot support the

19   finding that Mr. Thomas's Section 111 conviction is a crime of violence for 924(c)

20   purposes.

21       *Juvenile Female*'s alternate holding was that a violation of Section 111(b) also

22   qualified as a crime of violence under the almost-identical force clause enumerated in

23   18 U.S.C. § 16(a).[4]  566 F.3d at 948.  The court reasoned that "[a] defendant charged

24   with the first variant of § 111(b), assault with a deadly or a dangerous weapon, must

25

26       _____

27       [4] The force clause of Section 16 differs from the force clause of the career
     offender guideline only in that Section 16 includes force used against property in
     addition to force used against the person.  *Compare* 18 U.S.C. § 16(a), *with* U.S.S.G. §
28   4B1.2(a)(1).

                                         25

have always 'threatened [the] use of physical force,' 18 U.S.C. § 16(a), because he or she will have either made a 'wilful attempt to inflict injury' or a 'threat to inflict injury,' with an object that 'may endanger the life of or inflict great bodily harm on a person.' Similarly, a defendant charged under the second variant, assault resulting in bodily injury, necessarily must have committed an act of force in causing the injury." *Id*. (internal citations omitted) (internal alteration in original).

*Juvenile Female* does not control the determination of whether Petitioner's Section 111 conviction is a crime of violence under the force clause for two reasons. First, intervening Supreme Court precedent has undermined *Juvenile Female's* reasoning that assault on a federal officer was a crime of violence because it necessarily involves an act of force, such that assault on a federal officer no longer satisfies that clause. Second, the *Juvenile Female* court did not consider the additional question presented here; whether assault on a federal officer requires the intentional use of force and/or the intent to cause bodily injury. It does not. For that reason, *Juvenile Female*'s alternate holding has also been necessarily overruled.

### 1.   Assault on a Federal Officer Does Not Require the Use or Threatened Use of *Violent* Force.

Section 111 does not require violent force capable of causing physical pain or injury to another person. Accordingly, it is not a categorical match to the force clause in the career offender guideline. In 2014, based on the definition of physical force in *Johnson I*, the Ninth Circuit held that Section 111(a) is not a crime of violence under the illegal reentry guideline's force clause, a provision similar to the 924(c) force clause.[5] *United States v. Dominguez-Moroyoqui*, 748 F.3d 918, 921 (9th Cir. 2014).

---

[5] *Compare* U.S.S.G. § 2L1.2(b)(1)(A)(ii), cmt. n.1(B)(iii) (crime of violence includes an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another"), *with* 18 U.S.C. § 924(c)(3)(A) ("has as an element the use, attempted use, or threatened use of physical force against the person *or property* of another") (emphasis added).

26

Specifically, in *Dominguez-Moroyoqui*, the court recognized that "an assault under §
111 'does not require that any particular level of force be used.' . . . In fact, 'a
defendant may be convicted of violating section 111 if he or she uses *any force
whatsoever* against a federal officer. . . .'"  *Id.* (quoting *United States v. Sommerstedt*,
752 F.2d 1494, 1496 (9th Cir. 1985)).  For that reason, the court concluded that "[t]o
obtain a § 111(a) felony conviction, then, the government need not prove, and an
adjudicator need not find, that the offense involved violent force capable of causing
physical pain or injury" and therefore Section 111 categorically does not qualify as a
crime of violence under the force clause.  *Id.* (collecting cases of Section 111
convictions not involving violent force).

The analysis does not change when a violation of Section 111(b) involves the use
of a dangerous weapon. Any object is a deadly or dangerous weapon if it is used in a
way that is capable of causing death or serious bodily injury. *United States v. Sanchez*,
914 F.2d 1355, 1358 (9th Cir. 1990) (citing Ninth Circuit Criminal Jury Instruction 8.4
with approval). Even though the statute requires that the dangerous weapon be used in a
manner that is capable of causing death or serious injury, for the same reasons the
Fourth Circuit cited in *Torres-Miguel* this plainly does not require the use or threatened
use of "violent force" against another. *See supra*, III.A.1. For example, poison would
qualify as a dangerous weapon, and the act of poisoning or threatening to poison
someone's food in order to obtain money puts that person's life in jeopardy, but
requires no "violent force." Similarly, threatening to expose someone to hazardous
chemicals in order to obtain their property puts that person's life in jeopardy but
requires no "violent force."

Because "the full range of conduct" covered by Section 111(b) does not require
"violent force," the statute no longer qualifies as a crime of violence under the force

27

clause following *Johnson I*.[6]  *Juvenile Female's* conclusion to the contrary has been overruled.  *See Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (en banc) ("[T]he issues decided by the higher court need not be identical in order to be controlling.  Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable.").

### 2.    Section 111 Does Not Require the *Intentional* Use or Threatened Use of Force

The second reason assault on a federal officer is categorically overbroad and cannot support a finding that a defendant is a career offender under the force clause is because the statute contains no requirement that a defendant have possessed any mens rea with respect to his use of force or causation of injury, let alone that the defendant used force or caused injury intentionally.

In *United States v. Jim*, 865 F.2d 211, 215-16 (9th Cir. 1989), *cert. denied*, 493 U.S. 827 (1989), the Ninth Circuit held that Section 111 is a general intent crime.  It found that the statute has a broader congressional purpose than to deter assault; it is also meant "to protect federal officers in the exercise of their official duties."  *Id.*  The court reasoned that a general intent, as opposed to a specific intent, requirement would

---

[6]Because "none of th[e] alternative[] [methods of assaulting a federal officer] requires proof of the type of violent physical force mandated under [Section 4B1.2's] definition of a crime of violence[,] . . . the modified categorical approach has no role to play[.]"  *Dominguez-Maroyoqui*, 748 F.3d at 921-22.  In other words, because Section 111(b) is indivisible as to the material element of using violent force, the modified categorical approach does not apply.  *United States v. Werle*, __ F.3d __, 2016 WL 828132, *4 (9th Cir. Mar. 3, 2016) ("If a statute is overinclusive and indivisible as to any required element, the modified categorical approach cannot be applied to that statute.").  Even if the court were to apply the modified categorical approach in this case, the result would be the same because the court could only conclude that Petitioner was convicted of the portion of subsection (b) prohibiting the infliction of bodily injury which, for the reasons stated above, clearly does not require the use of violent physical force in all instances and is therefore overbroad.  (*See, e.g.*, Ex. A, Indictment, at 2 (alleging that Petitioner assaulted the correctional officer, "resulting in the infliction of bodily injury").)

28

further that congressional purpose. *Id.* The court cited, with approval, the Seventh Circuit's definition of the general intent required for a Section 111 conviction: "'the Government [does] not need to prove anything about the defendant's state of mind at the time he acted. The only issue [is] whether a reasonable man would find that the defendant's actions should have put a federal officer in apprehension of bodily harm.'" *Id.* at 212-13 (quoting *United States v. Staggs*, 553 F.2d 1073, 1076 (7th Cir. 1977)); *see also United States v. Vela*, 624 F.3d 1148, 1154 (9th Cir. 2010) ("*Jim* makes clear that § 111 defines a general intent, not a specific intent, crime."); *Garcia-Camacho*, 122 F.3d at 1268 ("[A]ssault on a federal officer, in violation of 18 U.S.C. § 111, is a general intent crime."); *United States v. Sanchez*, 914 F.2d 1355, 1358 (9th Cir. 1990) ("[N]o intent to injure is required for the offense of assaulting a federal officer.").

Under these cases, a defendant may be convicted of assaulting a federal officer even though he did not intend to put the officer in fear, but merely did some act that "a reasonable man would find . . . should have put a federal officer in apprehension of bodily harm." Thus, whether a defendant intended to use force or cause injury in the commission of an assault under Section 111 is irrelevant. It is simply not an element of the crime. As a statute must require the intentional use of force in order to match the definition of "use of force" in the career offender force clause following *Leocal* and *Fernandez-Ruiz*, and because Section 111 requires no such showing, assault of a federal officer cannot be a crime of violence under the force clause.

*Juvenile Female* does not preclude this argument because the court did not consider this issue. *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.") Although it did quote another Ninth Circuit case stating that Section 111 requires an "intent to assault," the *Juvenile Female* court did not consider whether the mens rea requirement for Section 111(b) was a categorical match to the mens rea requirement of the force clause. *See, generally,* 566 F.3d 943. Moreover, the case *Juvenile Female*

29

cited in support of the statement that Section 111 requires an intent to assault, *United States v. Spears*, 631 F.2d 114, 117 n.5 (9th Cir. 1980), dealt only with whether one had to know the identity of the person assaulted, that he was a federal officer -- a point that has no relevance here. For these reasons, a defendant's intent to cause injury is an element of Section 111(b).  And for that reason, Section 111(b) is categorically overbroad.  A conviction under that statute cannot support a finding that Petitioner has been convicted of a crime of violence under the force clause.

## IV.  CONCLUSION

For the reasons set forth above, Petitioner's sentence was "imposed in violation of the Constitution or laws of the United States," and is "in excess of the maximum authorized by law."  Petitioner is entitled to Section 2255 relief and the conviction and sentences attached to his 924(c) convictions should be struck.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender


DATED: May 20, 2016          By  /s/ *Brianna Fuller Mircheff*
                                  BRIANNA FULLER MIRCHEFF
                                  Deputy Federal Public Defender

# EXHIBIT A

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 1996 Grand Jury

UNITED STATES OF AMERICA,          )     No. ED CR 96-6(A)-RT
                                   )
              Plaintiff,           )     FIRST  SUPERSEDING
                                   )     I N D I C T M E N T
                                   )
         v.                        )     [18 U.S.C. § 2113(a),(d):
                                   )     Robbery of a Bank Using a
                                   )     Dangerous Weapon; 18 U.S.C.
REGINALD PARIS,                    )     § 1951: Interference with
ZELOS FIELDS and                   )     Commerce by Robbery; 18
CALVIN THOMAS,                     )     U.S.C. § 111(a)(1),(b):
                                   )     Assaulting a Federal Officer
                                   )     Using a Deadly Weapon; 18
              Defendants.          )     U.S.C. § 2: Aiding and
                                   )     Abetting;  18 U.S.C.
_____)     § 924(c)(1):  Using and
                                         Carrying a Firearm During a
                                         Crime of Violence; 18 U.S.C.
                                         § 3665: Forfeiture of
                                         Firearm]

     The Grand Jury charges:

                         COUNT ONE

                [18 U.S.C. §§ 2113(a),(d), 2]

     On or about February 8, 1996, in Riverside County, within

the Central District of California, defendants REGINALD PARIS,

CALVIN THOMAS and ZELOS FIELDS, by force, violence, and

intimidation, knowingly took from victim teller Carla Julkes

//

DCS:AS

and others, approximately $2,850 belonging to and in the care, custody, control, management and possession of United California Savings Bank, 6600 Magnolia Avenue, Riverside, California, a bank whose deposits were then insured by the Federal Deposit Insurance Corporation.

In committing the offense, defendants REGINALD PARIS, CALVIN THOMAS and ZELOS FIELDS assaulted, and aided, abetted, counseled, commanded, induced, procured, and caused the assault of, teller Carla Julkes and others by use of a gun, a dangerous weapon and device.

---

No 924(c)(1)
of
a....

COUNT THREE

[18 U.S.C. § 1951]

On or about February 9, 1996, in Riverside County, within the Central District of California, defendants REGINALD PARIS, CALVIN THOMAS and ZELOS FIELDS knowingly and willfully robbed the United States Parcel Service Office located at 1391 Spruce Street, Riverside, California, a business which accepts packages and merchandise for delivery outside California, thereby obstructing, delaying and affecting commerce.

COUNT FOUR

[18 U.S.C. §§ 924(c), 3665, 2]

On or about February 9, 1996, in Riverside County, within the Central District of California, defendants REGINALD PARIS, CALVIN THOMAS and ZELOS FIELDS knowingly used and carried, and aided, abetted, counseled, commanded, induced, procured, and caused the using and carrying of, a firearm, namely, a 9 millimeter semi-automatic handgun, during and in relation to a crime of violence, namely, the armed robbery of the United Parcel Service Office located at 1391 Spruce Street, Riverside, California, in violation of Title 18, United States Code, Section 1951.

The Grand Jury further alleges that the above-described firearm is subject to forfeiture, confiscation and disposal pursuant to the provisions of Title 18, United States Code, Section 3665.

COUNT FIVE

[18 U.S.C. §§ 111(a)(1), (b), 2]

On or about February 9, 1996, in Riverside County, within the Central District of California, defendants REGINALD PARIS, CALVIN THOMAS and ZELOS FIELDS forcibly assaulted, resisted, opposed, impeded and interfered with, and aided, abetted, counseled, commanded, induced, procured, and caused the forcible assault, resistance, opposition, impediment and interference of, Special Agent Mark Enyeart of the FBI, while Special Agent Enyeart was engaged in the performance of his official duties.

The Grand Jury further alleges that in the commission of the above-described acts defendants REGINALD PARIS, CALVIN THOMAS and ZELOS FIELDS knowingly used, aided, abetted, counseled, commanded, induced, procured, and caused the using of a deadly weapon, namely, a 9-millimeter semi-automatic handgun.

6

COUNT SIX

[18 U.S.C. §§ 924(c), 3665, 2]

On or about February 9, 1996, in Riverside County, within the Central District of California, defendants REGINALD PARIS, CALVIN THOMAS and ZELOS FIELDS knowingly used and carried, and aided, abetted, counseled, commanded, induced, procured, and caused the using and carrying of, a firearm, namely, a 9-millimeter semi-automatic handgun, during and in relation to a crime of violence, namely, the forcible assault of FBI Special Agent Mark Enyeart, while Special Agent was engaged in the performance of his official duties, in violation of Title 18, United States Code, Section 111(a)(1), (b).

The Grand Jury further alleges that the above-described firearm is subject to forfeiture, confiscation and disposal pursuant to the provisions of Title 18, United States Code, Section 3665.

A TRUE BILL

_____
Foreperson

NORA M. MANELLA
United States Attorney


RICHARD E. DROOYAN
Assistant United States Attorney
Chief, Criminal Division


DAVID C. SCHEPER
Assistant United States Attorney
Chief, Major Crimes Section